1
2
3
4
5
6

7                     IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9    MIRANDA P. HOFFMAN,

10                  Plaintiff,                    No. 2:11-cv-2338 EFB

11          vs.

12   CAROLYN W. COLVIN,[1] Acting
     Commissioner of Social Security,

13

14                  Defendant.                   ORDER

15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the

18   Social Security Act (the "Act").  As discussed below, plaintiff challenges an ALJ decision that, although

19   she became disabled beginning on December 1, 1994, her disability ended on April 1, 1998, and that

20   she was not entitled to benefits.  Presently before the court is plaintiff's motion for summary judgment.[2]

21   ECF No. 14.

22   _____

23          [1] Michael J. Astrue was previously named as defendant.  Carolyn W. Colvin is presently the
     acting Commissioner of Social Security.  Accordingly, the court now substitutes in Carolyn W. Colvin
     as defendant.  *See* Fed. R. Civ. P. 25(d).

24

25          [2] Although the Commissioner argues that the decision at issue here is supported by substantial
     evidence and in accord with the law, and therefore requests that the court affirm
26   the ALJ's decision, ECF No. 19 at 8, the Commissioner has not filed her own motion for summary
     judgment.

                                            1

1        The procedural posture of this case is unusual and complicated.  The issues involve a May 28,

2  1997 application which resulted in a final decision of the Commissioner that plaintiff was disabled and

3  entitled to Supplemental Security Income ("SSI") under Title XVI of the Act as of May 1, 1997, a

4  Continuing Disability Review which resulted in a final decision that plaintiff continued to be disabled as

5  of November 15, 2002, and an ALJ decision on a subsequent Title II  application (filed on October 8,

6  2004) that, notwithstanding the Commissioner's final decision in November 2002, plaintiff's disability

7  ended on April 1, 1998.  The crux of the issue presented here is on what evidence and according to

8  what standards and authority did the ALJ set aside the earlier final decision of the Commissioner?

9        Plaintiff argues on this motion that the ALJ (i.e., the Commissioner) was collaterally estopped

10  from finding that Plaintiff was no longer disabled as of any time on or prior to the November 15, 2002

11  decision.  Therefore, plaintiff seeks an order from the court reversing the most recent "final" decision of

12  the Commissioner and ordering the payment of benefits or, in the alternative, remanding the case for

13  further administrative proceedings.  For the reasons discussed below, the court grants plaintiff's motion,

14  reverses the ALJ's decision that plaintiff's disability ended on April 1, 1998, and remands the matter

15  for further consideration consistent with this order.

16  I. <u>BACKGROUND</u>

17        On May 28, 1997, plaintiff filed an application for both DIB and SSI.[3]  Administrative Record

18

19       [3] DIB benefits are paid to disabled persons who have contributed to the Social Security

20  program, 42 U.S.C. §§ 401 *et seq*.  SSI is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any

21  substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.

22  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

23          Step one:  Is the claimant engaging in substantial gainful activity?
      If so, the claimant is found not disabled.  If not, proceed to step two.

24          Step two:  Does the claimant have a "severe" impairment?  If
      so, proceed to step three.  If not, then a finding of not disabled is

25  appropriate.
          Step three:  Does the claimant's impairment or combination of

26  impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,

("AR") 297, 344.  Thereafter, the Commissioner granted plaintiff's application for Title XVI benefits, finding that plaintiff had been disabled as of May 1, 1997.  AR 298, 344.  However, the Commissioner also determined that plaintiff was not eligible for Title II benefits because there was insufficient evidence to demonstrate that she was disabled prior to September 30, 1995, the date that she last met the insured status requirement for Title II benefits.  AR 298-99.

Significantly, the Commissioner later conducted a Continuing Disability Review to determine whether plaintiff continued to be disabled.  AR 298.  Pursuant to that review, the Commissioner found on November 15, 2002 that plaintiff continued to be disabled as of that date.  *Id.*  There were no further reviews of that decision and it became a final and binding decision of the Commissioner.  20 C.F.R. §§ 404.905 and 416.1405.  Thereafter, plaintiff continued receiving Title XVI disability benefits until February 2007, at which time her eligibility terminated, not because of a finding that she was no longer disabled, but rather because her financial resources then exceeded the eligibility limits for SSI.  *Id.*

SSI is a needs-based program, and one of last resort.  As such, it requires all applicants as well as current beneficiaries to seek and apply for any other benefits for which they might be eligible, including Title II benefits under the Social Security Act.  20 C.F.R. § 416.210.  The failure to do so results in either the denial or termination of SSI benefits.  *Id.* § 416.210(e).  Thus, on October 8, 2004, (and prior to the termination of her SSI benefits), plaintiff again applied for DIB under Title II.  AR 54-

---

Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

58, 298.  That application, and the subsequent decision by an ALJ to effectively reconsider the

Commissioner's continuing disability finding of November 15, 2002, present the issue raised herein.[4]

*Id*.

The application was initially denied on January 20, 2005, and upon reconsideration on March

10, 2005.  AR 17-22, 25-27.  On January 16, 2007, a hearing on the application was held before

administrative law judge ("ALJ") Guy E. Fletcher.  AR 263-81.  Plaintiff was represented by counsel at

the hearing, at which plaintiff and a vocational expert ("VE") testified.  *Id*.

On February 20, 2007, the ALJ issued a decision finding that plaintiff was not disabled under

sections 216(I) and 223(d) of the Act through September 30, 1995, the date last insured.   AR 16.

The ALJ made the following specific findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on
> September 30, 1995.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from her
> alleged onset date of April 10, 1990 through her last date insured on September 30,
> 1995 (20 CFR 404.1520(b) and 404.1571 *et seq*.).
>
> 3.  Through the date last insured, the claimant had the following medically determinable
> impairments: polysubstance dependence and an affective disorder (20 CFR
> 404.1520(c)).
>
> 4.  Through the date last insured, excluding the effects of substance abuse, the claimant
> did not have an impairment or combination of impairments that significantly limited her
> ability to perform basic work-related activities for 12 consecutive months; therefore, the
> claimant did not have a severe impairment or combination of impairments aside from
> substance abuse (20 CFR 404.1521).
>
> * * *
>
> 5.  The claimant was not under a disability, as defined in the Social Security Act, at any
> time from April 10, 1990, the alleged onset date, through September 30, 1995, the
> date last insured (20 CFR 404.1520(c)).

AR 13-14.

_____

[4]  Plaintiff does not seek to reopen and revisit the 1997 denial of plaintiff's Title II application.
Instead, plaintiff contends that she is entitled to benefits based on her October 8, 2004 Title II
application.  ECF No. 14 at 6, n.1.

1    The Appeals Council denied plaintiff's request for review of the ALJ's decision.  AR 4-7.

2    Plaintiff then filed a civil action.  On January 28, 2008, the United States District Court for the District

3    of Maine granted the Commissioner's request for voluntary remand of the claim for a new ALJ hearing

4    to obtain expert medical testimony.  AR 316-18.

5    A supplemental hearing was held before ALJ Peter Belli on October 20, 2008.  AR 396-446.

6    Plaintiff had a non-attorney representative at the hearing, at which plaintiff, a vocational expert

7    (hereafter "VE"), and a medical consultant, James E. Shoemaker, M.D., testified.  *Id.*  On February 6,

8    2009, ALJ Belli issued a decision finding first that plaintiff met the Listing of Impairments and therefore

9    was presumptively disabled under Title II of the Act through March 31, 1998,[5] but secondly that as of

10   April 1, 1998, plaintiff had improved and regained the residual functional capacity ("RFC") to perform

11   unskilled work.[6]  AR 297-314.  After posing a string of hypothetical questions to the VE, the ALJ

12   found that plaintiff could perform her past relevant work.  AR 313-14.  The ALJ made the following

13   specific findings:

14        1. The claimant met the insured status requirements of the Social Security Act as of
          December 1, 1994, the date the claimant became disabled.
15
          2. The claimant has not engaged in substantial gainful activity since December 1, 1994,
16        the date disability has been established (20 CFR 404.1520(b) and 404.1571 *et seq.*).

17        3. At all times relevant to this decision, the claimant has had the following severe
          impairment: a bipolar affective disorder (20 CFR 404.1520(c)).
18
          * * *
19
          4. From December 1, 1994 through March 31, 1998, the period during which the
20        claimant was disabled, the severity of the claimant's bipolar affective disorder met the

21

22        [5] The ALJ found that plaintiff met Category 12.04 for bipolar affective disorders of the Listings,
      20 C.F.R. pt. 404, subpt. P, app. 1, as of December 1, 1994.  AR 303-11.  The listings are categories
      of impairments determined by the Commissioner to be of such severity that they are presumptively
23    disabling without further consideration under the sequential analysis.  20 C.F.R. § 1525(a).

24        [6] As discussed below, there is a marked difference between a medical condition severe enough
      to satisfy the criteria required by the Listings of Impairments for presumptive disability, which is at one
25    extreme of the sequential analysis, and a condition that would no longer qualify as disabling, which is the
      other extreme of that analysis.  Thus, one would ordinarily expect substantial medical evidence
26    demonstrating a significant change in medical condition to account for such a swing.

criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix (20 CFR 404.1520(d)).

* * *

5.  The claimant was under a disability, as defined in the Social Security Act, from December 1, 1994 through March 31, 1998 (20 CFR 404.1520(d)).

6.  Medical improvement occurred as of April 1, 1998, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).  Beginning on April 1, 1998, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).  The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(I)).  Beginning on April 1, 1998, the claimant has had the residual functional capacity to perform unskilled work with no restriction in her exertional abilities.

* * *

7.  The claimant was born on July 4, 1961 and was a younger individual during the period at issue, through the closed period (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Beginning on April 1, 1998, the claimant has been able to perform her past relevant work as a painter, a packager, a janitor and a shoe inspector (20 CFR 404.1565).

***

10.  The claimant's disability ended on April 1, 1998 (20 CFR 404.1594(f)(8)).

AR 303-14.

Plaintiff requested an amended decision from ALJ Belli.  AR 290-91.  The ALJ both denied the motion for amended decision and construed it as a request for review by the Appeals Council.  AR 289.  The Appeals Council again denied plaintiff's request for review, leaving ALJ Belli's decision as the final decision of the Commissioner of Social Security.  AR 283-86.  Thereafter, plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

/////

/////

1    II. LEGAL STANDARDS

2        The Commissioner's decision that a claimant is not disabled is deferential and will be upheld if

3    the findings of fact are supported by substantial evidence[7] in the record and the proper legal standards

4    were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6    180 F.3d 1094, 1097 (9th Cir. 1999).  Here, plaintiff seeks summary judgment, contending that the

7    ALJ was collaterally estopped from reconsidering the earlier, final and binding determination that

8    plaintiff continued to be disabled as of November 15, 2002.  Thus, plaintiff states that her motion raises

9    only the legal issue of whether principles of issue and/or claim preclusion prevented the ALJ from

10   reconsidering and reversing the Commissioner's decision of years ago that plaintiff, in November 2002,

11   continued to meet the requirements for disability under the Act.  ECF No. 14 at 7.

12   III. ANALYSIS

13       Plaintiff agrees with the Commissioner that her disability commenced on December 1, 1994,

14   but she argues that collateral estoppel precludes a finding that her disability ended on April 1, 1998.

15   She points out that the Commissioner's November 2002 adjudication of the Continuing Disability

16   Review resulted in a final decision that plaintiff continued to be disabled at that time.  Relying on 20

17   C.F.R. §§ 404.987(a) and 416.1487(a), plaintiff argues that a finding under either title of the Act

18   precludes a different finding on the same subject matter under the other title.  Plaintiff also contends that

19   common-law doctrines of collateral estoppel and res judicata apply to final administrative decisions,

20   and that those principles were incorporated by the Commissioner into the Social Security regulations.

21   *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).  According to plaintiff, in

22   light of collateral estoppel, the practical effect of the ALJ's decision that plaintiff's disability commenced

23   ————————————————

24       [7] The findings of the Commissioner as to any fact, if supported by substantial evidence, are
     conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more
     than a scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir.

25   1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a
     conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.

26   N.L.R.B.*, 305 U.S. 197, 229 (1938)).

as of December 1, 1994, is that she is eligible for Title II benefits because she was disabled before her date last insured (i.e., September 30, 1995), and continued to be disabled in November 2002.  ECF No. 14 at 5 (citing AR 298; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); 20 C.F.R. § 404.621 (allowing for the payment of 12 months of retroactive benefits from the date of application if the claimant files an application after all eligibility requirements have been established)).

The Commissioner's opposition brief argues that under 20 C.F.R. § 404.950(f), the relevant regulation pertaining to the effect of collateral estoppel, the ALJ was not bound by the 2002 decision.[8] ECF No. 19 at 5-7.  According to that brief, the regulation actually authorized the ALJ to disagree with that earlier decision, notwithstanding that it became the final decision of the agency in 2002.  For the reasons that follow below, the court concludes that the text of the regulations do not support that argument here.

Because the court was not satisfied that the parties' briefs adequately addressed the language of § 404.950(f) and how it should be interpreted in light of the regulations governing the effect of final decisions and the standards for when they can be reopened and revised, the court requested supplement briefing from the parties.  ECF No. 21.  Defendant filed a supplemental brief on March 13, 2013, and plaintiff filed a supplemental brief on March 20, 2013.  ECF Nos. 22, 23.

The supplemental briefs add little, other than to discuss the history of the adoption of §§ 404.950(f) and 416.1450(f); defendant arguing for a broad reading allowing considerable leeway to

---

[8] The Commissioner argues that plaintiff's reliance on 20 C.F.R. §§ 404.987(a) and 416.1487(a) – to propose that a determination under Title II precludes a different determination under Title XVI – is misplaced, contending that those regulations are inapplicable.  According to the Commissioner's opposition brief, these regulations refer to an ALJ's reopening of a prior determination under the *same title*, which the ALJ did not do here.  ECF No. 19 at 7 (citing ECF No. 14 at 5); *see also* AR 299 ("[T]he undersigned notes that the doctrine of collateral estoppel also bars the undersigned from reopening the prior application and finding that an overpayment occurred during the period that the claimant received (Title XVI benefits) after March of 1998")).

This  argument ignores that the definition of disability and the standards for determining disability are identical under both titles.  20 C.F.R. §§ 404.1505 and 416.905.  Furthermore, the Commissioner does not dispute that under 20 C.F.R. §§ 404.950(f) and 416.1450(f), a finding of fact under either title must be accepted as controlling under the other title, absent sufficient justification.  *See* discussion, *infra*.  Thus, the question remains, what justification existed for the ALJ to overturn the November 15, 2002 final decision?

reopen a prior final decision, and plaintiff arguing for a narrower reading. Each also references the

Commissioner's internal operations manual know as the Program Operations Manual ("POMS") and

argues that language therein supports their respective readings. Although plaintiff places considerable

emphasis on the POMS, defendant argues first that they are not controlling here, and second, that both

20 C.F.R. § 404.950(f) and POMS GN 04040.020 (which simply restates the language of

§ 404.950(f)), specifically give the ALJ the ability to decline to accept the Commissioner's earlier

factual finding made in a previous determination or decision made under a different title when there are

"reasons to believe it is wrong."

Defendant further urges that the history and language of 20 C.F.R. § 404.950(f) indicate that

the agency has more discretion than plaintiff suggests to make a different determination under a different

title as long as the agency supports that finding by showing the past decision was wrong. However, the

problem with defendant's argument here is that even with the broader construction of the regulation,

defendant has yet to provide a convincing explanation of what evidence in the record relevant to

plaintiff's psychiatric condition in 1998 or 2002 shows that the Commissioner's finding of disability and

award of benefits in 1998, and finding of a continuing disability November 2002 were plainly wrong.

After careful review of the record and the briefs of the parties, the court concludes that the

ALJ's decision of February 6, 2009 does not provide a legally adequate basis for setting aside the

Commissioner's earlier decision in November 2002 that the plaintiff continued to be disabled.

A.      Regulations Governing Reopening Prior Final Decisions.

The regulatory framework begins here with the regulations establishing the legal consequence of

the Commissioner's finding on November 15, 2002, that the plaintiff continued to be disabled as of that

date.[9]  There were no further reviews of that decision. Thus, the Commissioner's regulations clearly

provide that the decision became final and binding. 20 C.F.R. §§ 404.905(a) and 416.1405(a).

/////

---

[9] As noted, the ALJ's later conclusion that plaintiff's disability ceased over four years earlier, on April 1, 1998, cannot be squared with that previous decision of the Commissioner.

Although the Commissioner's regulations permit reopening of an earlier decision, *id.* (". . . a determination or decision made in your case which is otherwise final and binding may be reopened and revised by us"), the regulations also specifically limit the conditions under which the earlier determination may be revised. Regulations 20 C.F.R. §§ 404.988(a) and 416.1488(a) ("Conditions for reopening"), expressly limit the discretion to re-analyze and revise the earlier decision for any reason to 12 months from the date of the earlier decision. An earlier decision may be reopened and revised within 4 years only upon a finding of "good cause" as defined in §§ 404.989 and 416.1489.[10] 20 C.F.R. §§ 404.988(b) and 416.1488(b). Good cause, however, has its limits. It is defined as (1) "new and material evidence"; (2) "A clerical error in the computation or recomputation of benefits"; or (3) the evidence that was considered in making the earlier determination "clearly shows on its face that an error was made." 20 C.F.R. §§ 404.989(a) and 416.1489(a).

The regulations emphasize that good cause will not be found "if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." *Id.* §§ 404.989(b) and 416.1489(b). This scheme of deference to a prior final decision is emphasized in the Commissioner's Program Operations Manual System ("POMS"). The Commissioner admonishes in her POMS DI 27515.001 that adjudicators "must not substitute judgment" to reverse a prior determination/decision.[11] Rather, the Commissioner's regulations and the POMS instruct that her prior final decisions should not be reopened and revised beyond the one year period specified by §§ 404.988(a) and 416.1488(a) absent circumstances that would plainly show that an error was made. The Commissioner has given adequate examples of this by specifying math or

---

[10] The regulations permit reopening at anytime upon a finding that the earlier decision was obtained by "fraud or similar fault." *Id.*

[11] Defendant has taken issue with plaintiff's citation to the POMS, contending that the POMS is an internal agency document and, while it can be persuasive authority, it is not binding on the ALJ. However, in citing to the POMS, plaintiff notes that she "does not rely on either of the two POMS provisions in this case as creating any judicially enforceable duty," but instead relies on them "as a persuasive interpretation of an ambiguous regulation." ECF No. 20 at 4, n.2. Thus, she relies of the POMS for the very purpose that the Commissioner concedes is appropriate.

1  clerical errors, §§ 404.988(a)(2) and 416.1488(a)(2), or evidence which on its face manifests that the

2  earlier decision was obviously in error, §§ 404.988(a)(3) and 416.1488(a)(3).

3      Similar principles pertain to earlier decisions made under a different Title of the Act.

4  Specifically, the Commissioner's regulations do not permit an ALJ in a subsequent decision to simply

5  ignore or reconsider earlier decisions, or reweigh the factors or evidence that was previously

6  considered and resolved as final in the earlier finding unless her good cause criteria is satisfied.  The

7  Commissioner's regulations governing the review process at the hearing level make clear that the earlier

8  determination has preclusive effect.  20 C.F.R. § 404.950(f) and 416.1450(f) ("Collateral estoppel –

9  issues previously decided")  state that:

10         An issue at your hearing may be a fact that has already been decided in
           one of our previous determinations or decisions in a claim involving the
11         same parties, but arising under a different title of the Act....  If this
           happens, the administrative law judge will not consider the same issue
12         again, but will accept the factual finding made in the previous
           determination or decision unless there are reasons to believe it was
13         wrong.

14  20 C.F.R. § 404.950(f) and 416.1450(f) (emphasis added).

15      The mystery here is on what new and material evidence and on what authority the ALJ relied to

16  set aside the earlier and final decision of the Commissioner in November 2002 that plaintiff's disability,

17  which was found to have began on May 1, 1997, continued to be disabling on November 15, 2002.

18  The Commissioner's regulations make clear that her earlier finding of continuing disability has preclusive

19  effect, at least as to whether disability ended anytime on or before November 15, 2002, unless the ALJ

20  made a finding that there was new and material evidence bearing on that fact which shows that the

21  decision in November 2002 is plainly wrong.

22      B.    20 C.F.R. §§ 404.950(f) and 416.1450(f) Must Be Read in Light of the Conditions for
              Reopening.
23

24      The commissioner's brief, relying almost exclusively on the "reasons to believe it was wrong"

25  language contained in §§ 404.950(f) and 416.1450(f), argues that the ALJ sufficiently showed that the

26

1  2002 decision was wrong and he was therefore not required to accept it.  ECF No. 19 at 5-7.  But that

2  phrase cannot be read as permitting reopening and revising the earlier decision for any reason the ALJ

3  pleases.  The Commissioner's regulations squarely prohibit that result unless the earlier decision is being

4  reopened within 12 months of the decision.  20 C.F.R. §§ 404.988(a) and 416.1488(a).  Rather, the

5  phrase must be read in the context of the Commissioner's explicit regulations specifying the standards

6  that must be applied to reopen and revise her prior final decisions.  Thus, the question reduces to what

7  evidence in the record constitutes good cause for the ALJ to conclude in 2009 that the Commissioner

8  was plainly wrong in 2002 when the Commissioner found that plaintiff continued to be disabled.

9  According to the ALJ (AR 311) and the Commissioner's Supplemental brief filed herein, there was

10  very little medical evidence from that time period bearing on the plaintiff's condition.  ECF No. 22 at 5.

11       Given the of paucity of evidence in the record bearing on what plaintiff's actual medical

12  condition was in November of 2002 (at least as described by the ALJ),  it is difficult to identify a basis

13  under the Commissioner's regulations by which the ALJ could have reopened and revised the earlier

14  disability finding (i.e. refused to apply the earlier final decision because there were "reasons to believe it

15  was wrong").  AR 308-11.  Thus, while the government's opposition brief argues for a broad reading

16  of the words "reasons to believe it was wrong," the Commissioner has, as shown above, provided

17  more explicit guidance in the Regulations as to the standards that govern reopening and revising her

18  prior final decisions.  There is nothing in the record here to demonstrate a clerical error or other similar

19  obvious mistake.  20 C.F.R. §§ 404.988(b)(2) & (3) and 416.1488(b)(2) & (3).  The only remaining

20  possibility, subsection (b), requires that the ALJ find under §§ 404.989 and 416.1489 that new and

21  material evidence exists which warrants reopening the earlier decision.  There is no such finding here.[12]

22

23       [12]  The ALJ stated that "[w]hile new and material evidence has been provided [that a prior May
   28, 1997 Title II application was denied in error], more than four years has elapsed from the date of
24  the initial denial of benefits on April 7, 1998 to the date of the claimant's October 8, 2004 Title II
   application.  Thus, the prior application may not be reopened and revised in order to grant the
25  claimant's Title II benefits under the prior application filed on May 28, 1997."  AR at 299.  But the
   ALJ provided no analysis of the Commissioner's regulations as they pertained to the ALJ's decision to
26  set aside the Commissioner's continuing disability decision on November 15, 2002.

1    Nor does the record support such a finding.

2          The Commissioner's brief argues that "the ALJ properly determined that Plaintiff was not

3    disabled as of April 1, 1998 under Title II by finding that he 'disagrees with the prior [Title XVI] finding

4    by the Disability Determination Service that the claimant's mental impairment was at listing levels in the

5    year 2002 . . . .'" ECF No. 19, at 6 (quoting AR 312).  Yet, this describes precisely the sort of

6    second-guessing that the Commissioner has prohibited.  20 C.F.R. §§ 404.989(b) and 416.1489(b);

7    *see* POMS DI 27515.001.  The brief also notes that the ALJ independently reviewed the record and

8    sought guidance from a medical expert before concluding that plaintiff's disability ended on April 1,

9    1998.  *Id.* (citing 297-314; 396-445).[13]  How a medical consultant's review of records (or even a

10   medical examination of plaintiff) in 2008 or 2009 would reveal new and material evidence bearing on

11   plaintiff's psychiatric condition on April 1, 1998, is unexplained.  Nor is it explained why the

12   consultant's review in 2008 is more probative, or the opinion expressed superior to, the evidence the

13   Commissioner relied on in 2002.  It is significant that the ALJ concluded that he needed a consultative

14   medical record review.  He stated that besides the 2002 Title XVI decision, "*there is no other*

15   *medical evidence* documenting treatment for any physical impairment,"[14] nor is there any evidence that

16   plaintiff received any medical treatment for any mental impairments after March of 1998.  AR 311

17   (emphasis added).  Nonetheless, and in spite of the Commissioner's 2002 contrary decision, the ALJ

18   concluded based on an expert opinion obtained in 2008 that "there had been medical improvement

19   [with plaintiff's bipolar disorder] and the claimant regained the ability to perform unskilled work" as of

20   April 1, 1998.  *Id.*

21   /////

22   _____

23          [13] The citations are of no assistance.  AR "297-314" is the entirety of the ALJ decision.
     Likewise, AR "396-445" is the entire text of the transcript for the hearing held on October 20, 2009.
24   The brief cites to no point page(s) to support the assertion for which the citation is included.

25          [14] In fact, as discussed below, there was ample evidence to support the Commissioner earlier
     finding of disability in November 2002, including consultative examinations of the plaintiff by two well-
26   qualified medical experts.

1    The ALJ's concession that he could find in the record little to no evidence bearing on the time

2    period in question, coupled with his placing on the plaintiff both the consequence of that alleged

3    absence of evidence and the burden to prove that the Commissioner's prior final decision was right,

4    turns traditional notions of finality and collateral estoppel upside down.  The Commissioner made a

5    decision in 2002 that has long since become final.  A conclusion in 2009 that records are inadequate for

6    the plaintiff to prove that the Commissioner did not err in 2002 fails to accord the deference to the

7    Commissioner's earlier final decision that her regulations demand.  Likewise, having a consultant review

8    in 2008 the records that the Commissioner's experts reviewed (as well as generated) and relied upon in

9    2002 (AR 299) but express a contrary interpretation does not satisfy the requirements for setting aside

10   the Commissioner 2002 final decision.  20 C.F.R. §§ 404.989(b) and 416.1489(b); *see* POMS DI

11   27515.001.  The Commissioner's regulations require "*new* and material evidence" to reopen an earlier

12   decision that occurred more than one year and less then four years previously.  According to the ALJ,

13   the records that he asked the new consultant to review in 2008 were the same records the

14   Commissioner used in 2002 to find the plaintiff still disabled.  AR 299.  That is hardly new evidence.  A

15   consultant's opinion obtained years after the fact might be characterized in a limited sense as "new" but

16   hardly as "material."  As the Commissioner is well aware, the fact that a non-treating and non-

17   examining consultative expert reached an opinion (even if it had been obtained at the time of the

18   decision in 2002) that is contrary to that of the medical experts who actually examined plaintiff at the

19   relevant time[15] (*see* AR 211 (Dr. Randhawa, M.D), and AR 216-17 (Dr. McIntire, M.D.) (opining that

20   plaintiff meets the listings)), hardly means that the Commissioner was plainly wrong in 2002 to conclude

21   that plaintiff was still disabled at that time.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

22   1995); *see also Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.1995) ("The opinion of a nonexamining

23   physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . .

---

25   [15] Dr. Randhawa, a board certified psychiatrist, examined the plaintiff on October 13, 2002.
     AR 207.  Dr. McIntire, a board certified neurologist, examined the plaintiff on October 26, 2002.  AR
26   213.

1  an examining physician."). Moreover, to the extent that a third opinion was necessary to reach a

2  correct decision in 2002, neither the ALJ nor the Commissioner's brief explains any justification for not

3  obtaining that additional consultation in 2002 before the decision became final.

4         This is not a case of newly-discovered medical records created at or near the time of the

5  November 2002 decision that show the adjudicator at the time was in some way misled, or was not

6  provided crucial data which would have changed the outcome.  This is merely a case of reinterpretation

7  of records years later, in which the ALJ had another consultant long after the fact read the old records

8  and provide a different opinion disagreeing with the two doctors who actually examined the plaintiff at a

9  more relevant period of time.  That hardly constitutes good cause, or new and material evidence

10  warranting the setting aside of the Commissioner's final decision of November 15, 2002.  Indeed, one

11  is hard pressed to explain how the ALJ did any more than simply substitute his judgment years after the

12  fact for that of the adjudicator in 2002.  The Commissioner in 2002 obtained consultative examinations

13  from board certified doctors – who opined that plaintiff continued to be disabled (indeed met the

14  Listings) – and found that plaintiff continued to be disabled on that basis.  That decision became final

15  under the regulations.  Having another consultant years later read those same records and express a

16  contrary opinion appears to be the very sort of second-guessing long after the fact that the

17  Commissioner has cautioned against.  POMS DI 27515.001 (adjudicators "must not substitute

18  judgment" to reverse a prior determination/decision); *see also* 20 C.F.R. §§ 404.989(b) &

19  416.1489(b) (good cause will not be found "if the only reason for reopening is a change of legal

20  interpretation or administrative ruling upon which the determination or decision was made.").

21         For the reasons stated above, the ALJ's refusal to apply the Commissioner's November 15,

22  2002 decision that the plaintiff continued to be disabled on that date is not supported by any finding and

23  supporting evidence of good cause as defined in 20 C.F.R. §§ 404.988(b) and 416.1488(b) and,

24  accordingly, is clearly contrary to the requirement under §§ 404.950(f) and 416.1450(f) that "the

25  administrative law judge will not consider the same issue again, but will accept the factual finding made

26

in the previous determination. . . ." Accordingly, the finding that the plaintiff's disability ended on April 1, 1998  must be and is reversed.

IV.  CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 14) is granted;

2.  The Clerk is directed to enter judgment in plaintiff's favor;

3.  The matter is remanded for further proceedings consistent with this opinion.

DATED: June 24, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE